## BUTLER and others v. STECKEL and others.[1]

(*Circuit Court, N. D. Illinois.* March 22, 1886.)

1. PATENTS FOR INVENTIONS—BRETZEL-CUTTERS.
   Letters patent No. 274,264, granted March 20, 1883, to Butler, Earhart & Crawford, for a bretzel-cutter, is void for want of patentable novelty.

2. SAME.
   The prior art disclosing the use of flat dies for cutting dough into various forms, such as the letter "B" and character "&," and provided with scrap passages and expelling studs, *held*, that there was no patentable novelty in the dies of the patent, which were simply modified to cut dough into the shape of a hand-made bretzel, and combined with the old expelling studs.

3. SAME—EXPERIMENT—MECHANICAL SKILL—INVENTION.
   Although the production of the patented device may have required study, effort, and experiment, *held*, that only mechanical skill was required to produce it, and hence that there was no invention.

4. SAME—INVENTION, WHAT IS NOT EVIDENCE OF.
   The mere fact that others in trying to accomplish a given object had long wandered by the wrong path, is not evidence that invention was required to accomplish what patentee did by taking the direct path.

5. SAME—MERIT OF PATENTEES.
   The merit of these patentees seems to have been in overcoming a prejudice against machine-made goods, and not in the invention of any radically new process for making the goods by machinery.

*Frank Baker, Edson Bros.,* and *Hill & Dixon,* for complainants.
*Banning & Banning,* for defendants.

BLODGETT, J. This is a bill for an injunction and accounting by reason of the alleged infringement of letters patent No. 274,264, granted March 20, 1883, to the complainants, for a "Bretzel-cutter." In their specifications the patentees say:

"This invention relates to an improvement in moulds or dies for stamping or cutting out bretzels, having for its object more especially to cause the product or bretzel to have the appearance of a hand-made bretzel; and it consists in the peculiar construction of the mould or die to effect this result, and other details of construction, substantially as hereinafter more fully set forth. * * * In carrying out our invention, we construct the die after the fashion or configuration of the ordinary bretzel, in its general shape."

The bretzel has heretofore been chiefly made by rolling out a strip of dough, and bending it into nearly a semi-elliptical or heart shape, and crossing the ends, and laying them upon the outer rim of the circle. This form leaves, of course, three interior openings, and in cutting the bretzel from the sheet of dough as it passes under the cutter provision must be made for the interior scrap which is cut from the dough, and this is done by having an opening extending through the plate and cutting dies so that the interior scrap is carried off through the tubes connected with these openings.

The patent contains three claims, as follows:

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

(1) A flat die for cutting bretzels, having the bow, $a$, the loop $a^1$, $a^1$, the intermediate twisted portion and the end, $a^3$, $a^4$, and provided with the central creaser, $a^6$, the side creasers, $a^5$, $a^5$, and the end creasers, $a^7$, $a^7$, projecting into the bow, substantially as shown and described. (2) In a bretzel cutter the combination of the die, A, perforated as described for the reception and passage of the scraps, and for the expelling studs, F, with said studs, the guide-rod, C, the base, B, provided with feet or projections, $b^1$, the spring, $b$, perforated plate, D, and the hand-piece, E, substantially as shown and described. (3) A flat bretzel-shaped die, having three off-bearing internal scrap passages or channels, and perforations for the expelling studs, in combination with the expelling studs, substantially as shown and described.

The defenses are (1) that the device has no patentable novelty; (2) prior use.

The proof shows that it is old in the art connected with the preparation of food, to cut crackers, cookies, and cakes of various sorts into many shapes, including the shapes of animals, and shows the use, for at least 10 years before the application for the patent in question, of dies in bakeries for cutting cakes in the shape of the capital letter "B" and the character "&," with two or more scrap passages; and with dies of this character in public use, I cannot myself see any patentable novelty in the dies of the patent. They are simply made to cut a piece of dough in the shape of a hand-made bretzel, while the dies offered by the defendant as anticipating the complainants' dies cut pieces of dough into forms corresponding with the letter "B" and character "&" from which the internal scrap must be removed. These old dies also show expelling studs, by which the cut figure is expelled or pushed out of the die after being cut, performing the same function that is performed by the expelling studs in the patent. It is true, I doubt not, that it required considerable mechanical skill to make a die which would cut a bretzel from dough so as to imitate a hand-made bretzel, because the hand-made bretzel is somewhat clumsily shaped, as the parts are bent, twisted, and laid upon each other, and it was undoubtedly a matter requiring some study, effort, and experiment to make the shape of the die correspond with the external formation of the bretzel. This, however, seems to me not to involve invention, but mere mechanical skill. The cutter might be compelled to experiment some,—that is, cut several dies,—but that is not invention.

The proof also shows that a large number of persons, before these patentees, had attempted to make a machine which would cut bretzels, and considerable money and time seems to have been expended in efforts to produce such a machine; but the noticeable thing in regard to all these early efforts was the fact that most of those engaged in them were trying to draw out and twist the dough by machinery, rather than to cut or stamp dough from a flat sheet, while others were endeavoring to cut them with dies set in revolving cylinders; and as soon as the idea of cutting the dough from a flat sheet was conceived the difficulty seems to have vanished, and success followed

the effort, as the only change made was to adapt the old letter dies to the shape of a bretzel.    Why men should have groped so long in the effort to make a bretzel-cutter or bretzel-machine, with the ordinary cake cutters before them, it is difficult to understand, but the proof shows that they did so; but I cannot see that the mere fact that others were so long wandering by the wrong path is any evidence that it requires invention to accomplish what has been done by taking the direct path pursued by these patentees.    All they had to do was to make the die, and adopt the old form of cutting dies used in bakeries for many years; and the result seems to have been accomplished.    It seems to me, from the proof, that inasmuch as the bretzel is an article of time-honored history in the German countries, connected to some extent with the older religious observances of those people, and intimately with their present social enjoyments, that in the first efforts at making them by machinery it was assumed that they must in every respect simulate those made by hand or they would not be acceptable to the public; that they must not only simulate them in appearance, but the manipulation of the dough must be substantially the same as in those made by hand; but when the machine-made bretzels were introduced to the public, and accepted in place of the hand-made article, the problem was solved; and the merit of these patentees seems to me to have been in overcoming a fixed prejudice in favor of the hand-made goods rather than in inventing any radically new process for making the same goods by machinery.

The finding will be that the patent is void for want of novelty, and the bill dismissed.